**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECURED MAIL SOLUTIONS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ADVANCED IMAGE DIRECT, LLC, ET )<br>AL, )<br>)<br>Defendants. )<br>) | Civil Action  No. 1:13-cv-00873<br><br>Judge Amy J. St. Eve |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
R.R. DONNELLEY'S AND MICRODYNAMICS' JOINT MOTION TO DISMISS**

The Second Amended Complaint must be dismissed in its entirety because the United States Postal Service is a necessary and indispensible party to this case, and this Court lacks jurisdiction to adjudicate patent infringement claims against the United States.  Plaintiff asserts that Microdynamics and R.R. Donnelley directly and indirectly infringe the patents-in-suit through their use of the Intelligent Mail barcode promulgated by the United States Postal Service to provide "value-added mail services to their customers."  The Postal Service has multiple interests related to the IMb, such as claim construction and contractual interests, which would be prejudiced if this case proceeded without it.  Therefore, because the case does not and could not include the Postal Service as a defendant, the Court should dismiss the complaint.

At the very least, the Court should dismiss the indirect infringement claims.  Plaintiff is unable to allege sufficient facts to plausibly suggest that Defendants had the requisite knowledge or intent at the time they undertook the alleged infringing conduct.  This is exactly what Judge Carter ruled in dismissing these same indirect infringement claims with prejudice as against the California defendants.  (*See* Dkt. 74 at 11-13.)

## BACKGROUND

On July 9, 2012, Plaintiff filed this action against R.R. Donnelley and Microdynamics, alleging that both parties directly or indirectly infringe U.S. Patent Nos. 7,814,032 ("'032 Patent"), 7,818,268 ("'268 patent"), and 8,073,787 ("'787 Patent") (collectively, the "patents-in-suit"). (Dkt. 39, Exs. 1-3.)  The patents-in-suit disclose methods and systems for processing, verifying, and authenticating mail identification data.  Defendant R.R. Donnelley is a Chicago-based global provider of integrated communications, including commercial printing, direct mail production, mail logistics solutions, and business process outsourcing.  Defendant Microdynamics is a Naperville-based national provider of personalized transactional printing, inserting, and mailing services.  Neither Defendant competes with Plaintiff.

After Plaintiff filed a First Amended Complaint ("FAC") against the Defendants on August 22, 2012 (*see* Case No. SACV 12-1119 ("12-1119"), Dkt. 23), Defendants moved to dismiss the FAC on September 10, 2012, arguing *inter alia* that Plaintiff failed (i) to allege pre-suit notice for its indirect infringement claim and (ii) to join the USPS as a party to the action under Rule 19.  (*See* 12-1119, Dkt. 28.)  Before the California Court issued any decision on the motion to dismiss, it ordered that Plaintiff's case against R.R. Donnelley and Microdynamics be consolidated for discovery and pretrial purposes with the Plaintiff's two other patent infringement cases also pending in the Central District of California. (*See* 12-1119, Dkt. 40.)

On October 29, 2012, Plaintiff filed its Second Amended Complaint ("SAC"), reasserting its same flawed indirect infringement claims and failing to join the USPS (Dkt. 39.)  Again, Plaintiff did not allege that it had any pre-suit contact with the Defendants about their purported infringement, nor did it allege facts suggesting that Defendants had actual knowledge of the patents-in-suit prior to the filing of this lawsuit.  All of the defendants in the consolidated action

filed a joint motion to dismiss on November 26, 2012.  (Dkt. 54, 65, 67, 69.)  On December 7, Defendants also filed a Motion to Sever and Transfer.  (Dkt. 64, 66, 70.)

On January 30, 2013, the Central District of California ordered that Plaintiff's claims against R.R. Donnelley and Microdynamics be severed and transferred to the Northern District of Illinois, without ruling on the pending motion to dismiss as to R.R. Donnelley and Microdynamics.  (Dkt. 74, at 15.)  With respect to the non-transferred California defendants, however, the Court dismissed Plaintiff's indirect infringement claims *with prejudice.* (*Id.*) The Court found that the deficiencies with Plaintiff's indirect infringement claims—both failing to allege any pre-suit notice and to set forth facts showing that Defendants indirectly infringed— could not be cured by amendment and stressed that allowing Plaintiff to limit its indirect infringement claim to post-litigation conduct would "entice[ ] [a plaintiff] to roll the dice with litigation to receive some recovery for any indirectly infringing conduct taken by a defendant after the filing of the complaint." (*Id.* at 13.)  The Court also denied without prejudice the motion to dismiss for failure to join a necessary a party. (*Id.* at 15.)  On transfer, this Court instructed Defendants to refile this motion to dismiss under applicable Seventh Circuit law. (Dkt. 102.)

## ARGUMENT

### I.  Plaintiff's SAC Should Be Dismissed Under Rules 12(b)(7) And 19 For Failure To Join A Necessary And Indispensable Party.

#### A.  The USPS Is A Necessary Party

The USPS is a necessary party to this litigation because it has at least five interrelated and unprotected interests relating to the subject of this action. Under Rule 19(a)(1)(B), an entity is deemed necessary when "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i); *see*

*also Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 478 (7th Cir. 1996). Specifically, as discussed in detail below, the USPS has the following interests that make it a necessary party: 1) the Court's claim construction which will define as a matter of law to what extent the patents-in-suit capture USPS conduct; 2) the USPS' commercial stake in the IMb, its related infrastructure and business operations and widespread use; 3) its contracts with Defendants to provide and perform IMb related mail services directly at issue here; 4) its regulations and practices governing the IMb, its use, and IMb related services; and 5) avoiding subsequent suits against it.

     **1. Claim Construction.** The USPS has a paramount interest in the outcome of this Court's claim construction because all of Plaintiff's infringement allegations and many of the claims of the patents-in-suit directly involve the IMb as employed by the USPS and require the actions of a "mail carrier," *i.e.*, the USPS. *See, e.g.*, SAC ¶¶ 24 ("all of the infringing products (or software) are configured to generate, store, process and acquire a common barcode (e.g., the Intelligent Mail barcode)"), 29 ("infringing products are used to affix IMbs on mail objects, and store at least portions of the IMbs . . . in a storage device"); '268 Patent claims 18-32, '032 Patent claims 1-22, and '787 Patent claims 17-29 and 41-49 (actions including scanning barcodes, requesting verification data, comparing verification data, and routing mail). Still other claims, *e.g.,* '787 Patent claims 1-16 and 50-58, cover the systems of the USPS, such as a scanner that scans "printed mail identification data," *i.e.*, the IMb, on a mail object and a computer that transmits such scanned data. Moreover, the specification common to the patents-in-suit also describes the invention as explicitly involving the USPS. *See, e.g.*, '268 Patent at 5:53-59 ("In another embodiment of the present invention, the *U.S. Postal Service . . .* is the recipient (as defined by this application) of the mail object 130, thus interacting with the reception device 120 to receive mail verification data.") (emphasis added); 2:47-51 (similar).

Hence, the Court will need to determine whether the claims should be construed to cover the USPS because "a claim interpretation that excludes a preferred embodiment from the scope of the claim is 'rarely, if ever, correct.'" *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004). Accordingly, the USPS has an interest in advocating for a claim construction that at minimum does not cover its own activities and systems, and potentially a construction that also does not cover its relationships with commercial mailers such as Defendants.

**2. Commercial Interests.** The USPS has a significant commercial interest in this case that will be directly impacted by at least this Court's claim construction ruling and ultimate outcome. *See Hall*, 100 F.3d at 479 (finding party was necessary because it had "a commercial stake in the outcome of this litigation"). Since 2001, the USPS has invested several hundreds of millions of dollars[1] developing and launching the IMb specification and the corresponding Intelligent Mail infrastructure to "improve efficiency and reduce costs." *See* Ex. 4 at 4, 28. The IMb is now the *only* barcode that the USPS supports for automation price eligibility. *See* Ex. 5 at 1. The "Intelligent Mail program is the most complex program [the USPS] has ever undertaken, involving changes to almost 30 different systems," the success of which "is important to the future of USPS." *See* Ex. 4 at 1, 14. Indeed, the users of the IMb are "commercial mailers, who in 2008 accounted for 86 percent of all mail processed by [the] USPS." *Id.* at 2.

The Court's claim construction will necessarily impact the determination of whether the USPS, the Defendants, and/or other commercial mailers infringe the patents-in-suit. An adverse

---

[1] *See, e.g.,* Ex. 1 at 1 ("$351 million to develop and deploy" handheld IMb scanners); Ex. 2 at 6 ("$63.9 million in capital funding, to create an infrastructure that will facilitate the 2009 IMB deployment . . . and automate several business mail verification activities."); Ex. 3 at 5 ("The cost of the [Intelligent Mail Barcode Full Service-Seamless Acceptance Service Performance] IMB/SASP project currently totals $116.4 million, including $63.9 million in capital equipment (hardware and software) funding.").

determination would cause these entities to cease using or migrate away from the IMb, jeopardizing the USPS' IMb related planning and investments and its financial viability. The USPS "stand[s] to suffer substantial losses if the validity of the patent is upheld and infringement proven," and is therefore a necessary party. *Reed v. Quigg*, Case No. 85-cv-2762, 1986 WL 84371, at *3 (D.D.C. May 13, 1986); *see also Hall*, 100 F.3d at 479.

**3. Contractual Relations.** The USPS' commercial interests are also directly implicated by Plaintiff's requested permanent injunction to enjoin Defendants and "those acting in privity" with them from further infringement. *See* SAC, Prayer for Relief. If Plaintiff prevails, then the scope of any injunction would necessarily reach the USPS because it is in privity with Defendants.[2] The USPS contracts with Defendants and other commercial mailers to accept and deliver mail based on specific terms and conditions, including the IMb and published discounted rate schedules. *See, e.g.*, 39 U.S.C. § 101. An injunction would constrain, if not prohibit, the USPS and/or Defendants from continuing to use the IMb and IMb related services[3] and to set aside or breach their contracts with one another, causing a loss in revenue and other damages.[4]

**4. Regulations and Practices.** The USPS codified many of its practices involving the IMb, IMb related services, and electronic data communicated between the USPS and commercial

---

[2] It also follows that under Rule 19(a)(1)(A), complete relief cannot be afforded in the absence of the USPS, whose conduct implicates the very injunctive relief sought. *See Associated Dry Goods Corp. v. Towers Financial Corp*., 920 F.2d 1121, 1124 (2nd Cir. 1990) (finding party necessary where full injunctive relief could not be granted in party's absence); *Klitzner Indus., Inc. v. H.K. James & Co.*, 96 F.R.D. 614, 616 (E.D. Pa. 1983) (noting possibility that missing party's presence might be necessary to afford complete injunctive relief).

[3] For example, scanning and extracting data from an IMb printed on a mail object, as in claims 50-58 of the '787 Patent.

[4] As a party to those contracts, the USPS has an interest in its contracts with Defendants that make it a necessary party. *See Hall*, 100 F.3d at 479 ("A judicial declaration as to the validity of the contract necessarily affects, 'as a practical matter,' the interests of both parties to the contract."); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist*., 276 F.3d 1150, 1157 (9th Cir. 2002) ("a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract").

mailers, which are specified in the Mailing Standards of United States Postal Service, Domestic Mail Manual, and incorporated by reference in 39 C.F.R. § 111.1. At the very least, an adverse claim construction and/or injunction would force the USPS to modify the IMb, its IMb related services, and data communicated. As a "public entity," the USPS has "an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices." *E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010); *McCowen v. Jamieson*, 724 F.2d 1421, 1423-24 (9th Cir. 1984) (Department of Agriculture had interest in action where plaintiffs indirectly attacked its interpretation of regulations).

**5. Subsequent Litigation.** The Court's claim construction also has a direct impact on the USPS' interest in defending against a subsequent suit against it. The Supreme Court has acknowledged that the impact of a judgment on a third party may render that party necessary even where there is no risk that the third party will be technically bound by a judgment. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110-111 (1968). Indeed, a party may be deemed necessary where there is prejudice "as a practical matter," such as with the persuasive effect of this Court's claim construction and ultimate determination of whether the claims of the patents-in-suit, as properly construed, are infringed by the USPS and its commercial mail customers. *See Gottlieb v. Armstrong, Brown and Sherman*, 69 F.R.D. 672, 675-76 (N.D. Ill. 1975) (citing *Evergreen Park N. & C. Home, Inc. v. American Equity Assurance Co.*, 417 F.2d 1113 (7th Cir. 1969)); *Klamath Tribe Claims Comm. v. United States*, 106 Fed. Cl. 87, 96-97 (Fed. Cl. 2012) (citing *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78-79 (1st Cir. 1982) for the proposition that "[e]ven if Acton would not be legally bound, an adverse ruling would be persuasive precedent in a subsequent proceeding").

The persuasive force of a prior judgment is particularly significant in the context of patent litigation actions, where courts often rely on uniform claim construction, particularly when made at the appellate level. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996) (discussing importance of uniformity in claim construction). Because district courts often defer to prior claims construction rulings even when issue preclusion is not technically applicable, prior judgments in patent infringement cases have even more of a practical effect on subsequent litigation than judgments rendered in other types of tort actions. *See Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 540 F. Supp. 2d 1233, 1242 (M.D. Fla. 2008) (prior court's claim construction entitled to "reasoned deference"); *Texas Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 589 (E.D. Tex. 2002) (noting that courts may defer to previous claim constructions); *KX Indus., L.P. v. PUR Water Purification Prods., Inc.*, 108 F. Supp. 2d 380, 387 (D. Del. 2000) (deferring to prior claim construction). Here, if there is a finding of infringement against Defendants, then the USPS' ability to defend against subsequent suits will be unduly hindered by an adverse claim construction ruling or other determinations, such as what is required to comply with the USPS' IMb regulations and use USPS IMb related services.

For each of these above reasons, the USPS is a necessary party under Rule 19(a)(1)(B).

**B. The USPS Is An Indispensible Party Such That This Case Must Be Dismissed**

Once an absent party is deemed necessary, courts must examine whether joinder of that required party is feasible. *BI3, Inc. v. Hamor*, Case No. 08-cv-2384, 2011 WL 9728, at *3 (N.D. Ill. Jan. 3, 2011); *see also Hall*, 100 F.3d at 478-79. Here, joinder of the USPS is not feasible for jurisdictional reasons because patent infringement claims against the United States must proceed in the Court of Federal Claims. *See* 28 U.S.C. § 1498(a); *Marshburn v. Postmaster General*, 678

F. Supp. 1182, 1185 (D. Md. 1988) (dismissing copyright claim against the USPS because district court did not have jurisdiction). Consequently, the court must then apply Rule 19(b) and consider its non-exclusive factors to determine whether the non-party is "indispensable" such that in "equity and good conscience" the case should be dismissed. *Hamor*, 2011 WL 9728, at *3. As discussed below, the non-exclusive factors, on balance, favor dismissal.

The first factor regarding prejudice to any person or party, Rule 19(b)(1), is essentially the same as the considerations that made a party necessary under Rule 19(a). *See Gottlieb*, 69 F.R.D. at 680; *Dawavendewa,* 276 F.3d at 1162. The interests of the USPS are not the same as the Defendants, and thus, its interest will not be "adequately protected" by Defendants or Plaintiff. *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc*., 142 F.3d 1266, 1272 (Fed. Cir. 1998); *Hamor*, 2011 WL 9728, at *4 (holding that an "identity of interests" must be shown to minimize prejudice, "'mere similarity' is not enough"). For example, the USPS' acute interest in advocating a claim construction that does not cover its own activities is not shared by the Defendants, who are primarily concerned with proving their own non-infringement, or Plaintiff.

The second factor of lessening prejudice, Rule 19(b)(2), also favors dismissal. If Plaintiff prevails in this action, there is no practical way that the Court can shape the relief to lessen the prejudice discussed above suffered by the USPS or the Defendants. The Court cannot "lessen the prejudicial impact of its decision[s] in this action" regarding claim construction, the validity of the patent, and the USPS' regulations and practices. *See Gottlieb*, 69 F.R.D at 680. Moreover, the Court cannot lessen the negative impact of an adverse decision on the USPS' commercial interests, its interest in its contracts with Defendants, or in its interests in its regulations and practices.

The third factor asks "whether a judgment rendered in the person's absence would be

adequate." In this context, "adequacy" of the judgment concerns not the "satisfaction" of Plaintiff's claims, but rather the "public stake in settling disputes by wholes, whenever possible." *Republic of the Philippines v. Pimental*, 553 U.S. 851, 870 (2008) ("This 'social interest in the efficient administration of justice and the avoidance of multiple litigation' is an interest that has 'traditionally been thought to support compulsory joinder of absent and potentially adverse claimants.'"). Absent joinder of the USPS as a party, any determination in this action will not "settle disputes by wholes," but instead open the door to further allegations levied against the USPS and those other commercial mailers who, like Defendants, employ the USPS's IMb and IMb related services. Accordingly, this is an "important factor" because this controversy could be resolved in whole in a proceeding with the USPS. *See Gottlieb*, 69 F.R.D at 680.

The fourth factor asks "whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder." This factor is the "most significant of the set," and under Seventh Circuit law, "a dismissal can be ordered in good conscience when an alternative forum is available." *See Gottlieb*, 69 F.R.D at 680 (citing *Evergreen Park*, 417 F.2d at 1116). Here, Plaintiff has an adequate remedy; it may bring an action against the USPS in the Court of Federal Claims. *See* 28 U.S.C. § 1498(a). Accordingly, this factor weighs heavily in favor of dismissal. *See id; Takeda v. Northwest Nat'l Life Ins. Co.,* 765 F.2d 815, 821 (9th Cir. 1985) (holding alternative forum is one of the primary considerations in the Rule 19(b) analysis and can "weigh[ ] strongly in favor" of dismissal); *Anrig v. Ringsby United*, 603 F.2d 1319, 1326 (9th Cir. 1979).

After balancing the Rule 19(b) factors, the Court should find that the USPS is an indispensable party and equity and good conscience dictate that this case should be dismissed.[5]

---

[5] To the extent that Plaintiff's claims for indirect infringement survive this motion to dismiss, the law is clear that "sovereign immunity of the United States can justify dismissal for inability to join an indispensable party, despite the fact that no alternative forum is available." *Delano*

## II.  Plaintiff's Indirect Infringement Claims Should Be Dismissed Under Rule 12(b)(6).

Plaintiff's claims of indirect – induced and contributory – infringement should be dismissed for several reasons—most notably because, after three opportunities to do so, Plaintiff still fails to allege that Defendants had the requisite knowledge and intent at the time the accused conduct occurred.  *See* SAC ¶¶ 54, 57, 74, 77, 94, 97.  Indeed, in its third attempt, Plaintiff again fails to satisfy Rule 8(a), which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

Plaintiff's indirect infringement claims must be premised on "purposeful, culpable expression and conduct" by the alleged infringers. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011).  Stripped of its bare assertions and formulaic recitations, and as Judge Carter held as to *this same complaint* in the California case, Plaintiff's SAC does not allege sufficient facts to demonstrate how Plaintiff might be plausibly entitled to relief for indirect infringement and therefore, these claims must be dismissed.

### A.  Plaintiff Fails To State A Plausible Claim For Pre-Suit Indirect Infringement.

---

*Farms Co. v. Cal. Table Grape Comm'n,*  623 F. Supp. 2d 1144, 1170 (E.D. Cal. 2009).  "If the necessary party is immune from suit, there may be 'very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor.'"  *Kescoli v. Babbitt*, 101 F.3d 1304,  1311 (9th Cir. 1996) (dismissing lawsuit where Tribe was indispensable party and had not waived sovereign immunity); *Hall*, 100 F.3d at 480-81 (same).  Here, the USPS cannot be joined in any forum because the United States has not waived its sovereign immunity with respect to acts of indirect infringement.  *See Zoltek Corp. v. U.S.*, 672 F.3d 1309, 1320 (Fed. Cir. 2012).  Accordingly, the immunity of the USPS from a properly pled indirect infringement claim is enough to mandate dismissal of this action.

Plaintiff's pre-suit indirect infringement claims should be dismissed with prejudice because after two rounds of amendments the SAC still fails to allege that Defendants knew of the patents-in-suit *before* this lawsuit commenced. Infringement under 35 U.S.C. § 271(b), requires proof that, among other things, the alleged infringer "*knowingly* induced infringement." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) (emphasis added). Likewise, contributory infringement under 35 U.S.C. § 271(c) requires a showing the alleged infringer had "knowledge of the existence of the patent that is infringed" and knowledge "that the combination for which his component was especially designed was both patented and infringing." *See Global Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067-68 (2011).

Plaintiff's original complaint ignored the knowledge element altogether. Plaintiff's SAC merely claims that "[each Defendant] has had actual notice of [the patents-in-suit] and [Plaintiff's] infringement contentions since at least July 2012," when Plaintiff filed its original complaint. (SAC ¶¶ 55, 58, 75, 78, 95, 98.) Significantly, *no facts* are alleged to infer that Defendants knew about the patents-in-suit *before* July 9, 2012, the filing of the original complaints. Yet, it is undisputed that a claim for indirect infringement cannot arise until, at a minimum, the defendants have knowledge or notice of the patents-in-suit. *See, e.g.*, *Global-Tech Appliances, Inc.*, 131 S. Ct. at 2068; *Intellect Wireless v. Sharp Corp.*, No. 10 C 6763, 2012 WL 787051, at *11 n.6 (N.D. Ill. Mar. 9, 2012) ("If a plaintiff sought liability and damages for pre-filing inducement, knowledge of the patent resulting from the complaint would not be sufficient to establish the knowledge required to impose liability for acts of inducement that occurred before the commencement of the lawsuit.").

Indeed, Plaintiff concedes this point and admits that it had no basis to allege indirect

infringement at the time it filed the initial complaint. (*See* Dkt. 67 at 5 (explaining that it is only basing liability "for conduct since each Defendant has [] knowledge"); *see also* 12-1119, Dkt. 33 at 7 ("[T]he case can go forward to determine whether Defendants are liable for the period from that notice until the present.").) Undeterred, Plaintiff attempts to leave the door open for pre-suit indirect infringement liability by claiming—through rank speculation—that "discovery *may* uncover facts that could establish knowledge at an earlier date." (Dkt. 67 at 5 (emphasis added).) Following Judge Carter's lead, this Court should not condone Plaintiff's strategy to first file a lawsuit and then troll on a fishing expedition to see if it can unearth facts sufficient to litigate an indirect infringement claim that did not exist when the complaint was filed. *See, e.g.*, *Iqbal*, 556 U.S. at 678-79 ("[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Plaintiff cannot allege any facts for the Court to infer that Defendants know of the patents-in-suit before service of the original complaints on July 9, 2012, and thus, this Court should dismiss with prejudice all allegations of indirect infringement relating to conduct prior to this lawsuit.

**B. Plaintiff Fails To State A Plausible Claim For Post-Suit Indirect Infringement.**

The SAC, like the complaints that preceded it, fails to adequately plead either induced infringement or contributory infringement for post-suit conduct and should be dismissed under Rule 12(b)(6) for at least two independent reasons.

First, under Rule 15(a), the SAC relates back to the July 9, 2012 filing date of the original complaint and is not a supplemental complaint under Rule 15(d). Thus, Plaintiff may not allege facts or claims that arose *after* the filing of the original complaint on July 9, 2012. "Before the complaint may be broadened to encompass subsequent events, the plaintiff must move to supplement it. Federal Rule of Civil Procedure 15(d) provides a mechanism for doing just that."

13

*Chicago Regional Council* v. *Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011). Plaintiff has not moved for leave to file a supplemental complaint. Thus, all post-complaint facts in the SAC that purport to speak to knowledge or notice of the patents-in-suit on or after July 9, 2012 are improper and should be disregarded. Without any allegations of knowledge or notice, Plaintiff's indirect infringement claims fail.

Second, under *Iqbal* and *Twombly*, the SAC lacks non-conclusory allegations that Defendants' post-suit conduct was taken with the requisite knowledge or intent. (*See* SAC ¶ 36 (alleging Defendants continue to direct customers to use the allegedly infringing software, "or portion thereof")). As to the inducement claims, Plaintiff's scant conclusory allegations simply fail to cross the threshold of plausibility required by *Twombly* and *Iqbal* since they do not include any facts to infer that Defendants "knowingly induced infringement and possessed specific intent to encourage another's infringement." *See Gharb v. Mitsubishi Elec. Automation, Inc.*, No. 10-c-7204, 2012 WL 1986435, at *7 (N.D. Ill. June 4, 2012) (internal citations omitted); *see also DSU Med. Corp. v. JMS Co., Ltd.*, 471 F. 3d 1293, 1305 (Fed. Cir. 2006) ("The mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.") (internal citations omitted).

Between the obvious alternative for Defendants' post-suit conduct—to continue their businesses—and the purposeful, invidious intent to encourage infringement that the Plaintiff intimates, the intent to cause infringement is not a plausible conclusion on the facts alleged. *See, e.g., Iqbal*, 556 U.S. at 1949 ("Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief.'") (internal citations omitted).

Plaintiff's contributory infringement claim that arises from Defendants' alleged provision

of "value-added mail services" to customers and third parties (SAC ¶¶ 23, 26) should be dismissed because §271(c) does not apply to services. *See, e.g.*, *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1357-58 (Fed. Cir. 2007) (finding liability under section 271(c) does not extend to the sale of a service). Further, Plaintiff's contributory infringement allegations directed at the sale of products and not services fail to allege facts that could plausibly suggest that Defendants knew that the products sold were "especially made or especially adapted for use in an infringement" of the patents-in-suit. *See Gharb*, 2012 WL 1986435, at *5 (quoting 35 U.S.C. § 271(c) (2008)). Again, bare allegations of knowledge are not sufficient to make the requisite intent plausible. *See, e.g., Iqbal*, 556 U.S. at 1949.

Perhaps nothing more clearly illustrates the insufficiency of Plaintiff's indirect infringement allegations than Judge Carter's analysis of Plaintiff's same indirect infringement allegations in the SAC under *Twombly* and *Iqbal.* (*See* Dkt. 74, at 11-13.) Dismissing with prejudice Plaintiff's pre- and post-suit indirect infringement claims, Judge Carter found that Plaintiff "fail[ed] to set forth a set of facts showing that, if true, Defendants indirectly infringed Plaintiff's patents" (*Id.* at 12), and that the deficiencies with Plaintiff's indirect infringement claims could not be cured by amendment. (*Id.* at 13.)[6] This Court should do the same.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiff's SAC for failure to join a necessary and indispensable party pursuant to Rule 12(b)(7), or, at a minimum, dismiss Plaintiff's indirect infringement claims with prejudice under Rule 12(b)(6).

Dated:  March 26, 2013                                   Respectfully submitted,

---

[6]  Judge Carter also found that dismissal for lack of pre-suit notice to be sound public policy: "[s]ending letters *after* filing a complaint does not further the interests of judicial economy in 'preserv[ing] parties' resources [and] encouraging resolution *prior* to filing a lawsuit." (*See* Dkt. 74, at 12 (emphasis in original) (internal citations omitted).)

By: /s/ *Samantha L. Maxfield*
Derek J. Sarafa
dsarafa@winston.com
Samantha L. Maxfield
smaxfield@winston.com
Quinn C. Shean
qshean@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700


David P. Enzminger (*Pro Hac Vice*)
denzminger@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750


*Attorneys for Defendant R.R. Donnelley & Sons Company*

/s/ *Robert M. Isackson*
Matthew C. Crowl
mcrowl@schiffhardin.com
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
Telephone: (312) 258-5609
Facsimile: (312) 258-5600


Robert M. Isackson (*Pro Hac Vice*)
risackson@orrick.com
Nicholas H. Lam (*Pro Hac Vice*)
nlam@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151


*Attorneys for Defendants Microdynamics Group, Inc. and Microdynamics Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of March, 2013, ***Memorandum of Law in Support of Defendants R.R. Donnelley's & Microdynamics' Joint Motion to Dismiss*** was served by causing a true and correct copy of the same to be delivered to all Filing Users through the Court's ECF system.

/s/ *Samantha L. Maxfield*
Samantha L. Maxfield